* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chapman and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except for minor modifications.
 * * * * * * * * * * *
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. Plaintiff James R. Tyndall was employed by Carolina Soy Products, Inc. on May 6, 2003 and August 5, 2003.
2. The parties are subject to and bound by the North Carolina Workers' Compensation Act.
3. The employer-employee relationship existed at the time of the plaintiff's injuries, and continues in effect.
4. Defendant regularly employs three or more employees, and is bound by the North Carolina Workers' Compensation Act, and the North Carolina Industrial Commission has jurisdiction to hear this matter.
5. On May 6, 2003 and August 5, 2003, defendant, Carolina Soy Products, Inc., was the employer at risk with benefits administered by Travelers Indemnity Company for payment of workers' compensation claims for its employees, including plaintiff.
In addition, the parties stipulated into evidence the following:
1. Packet of Industrial Commission forms.
2. Indexed packet of medical records and reports marked Exhibits A through H.
3. An addendum of medical records submitted by defendants.
The Pre-Trial Agreement dated July 13, 2005 which was submitted by the parties, is incorporated by reference.
 * * * * * * * * * * *
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. Plaintiff, a forty-three (43) year old male, began working for defendant in the maintenance section approximately in September 1999. Plaintiff's job duties included repairing equipment, welding, helping to build new structures and performing other duties as needed. The company paid him an annual salary of $45,000.00, which generated an average weekly wage of $863.01.
2. Prior to the May 6, 2003 incident in question, plaintiff had experienced problems with both of his knees. He had undergone surgery for a torn and cystic lateral meniscus in his left knee in April 1997 by Dr. Classen, an orthopedic surgeon. On April 23, 2003 he returned to Dr. Classen with complaints of right knee pain and episodes of the knee giving way. An MRI confirmed Dr. Classen's impression of a torn and cystic lateral meniscus to the knee to which he performed arthroscopic surgery on May 2, 2003. He was able to remove the torn cartilage but was unable to reach the cyst from within the knee and decided not to approach it from an outside incision.
3. Plaintiff returned to work on Monday May 5, 2003 at the request of Bob Dawson, the chief operating officer of the company, but sat in a conference room where he was available for consultation regarding work activities performed by other employees. On May 6, 2003, Mr. Dawson asked him if he thought he would be able to operate a backhoe, an activity not part of his normal work duties, considering his knee condition. Plaintiff indicated that he thought he could. Plaintiff drove the backhoe to level an area where a new building was going to be constructed at the site. While operating the backhoe, a coworker, Thomas Lee, was pulling a drag with a riding lawn mower in order to smooth the surface once it had been leveled.
4. The lawn mower being operated by Thomas Lee became stuck. Plaintiff helped Mr. Lee with the lawn mower, while still on crutches and wearing a knee brace. In order to step down from the backhoe to the ground plaintiff had to step through a narrow opening on the backhoe. While stepping down from the backhoe, plaintiff's right knee popped and he experienced increased pain in the joint. He told Mr. Lee that he had hurt his knee and reported the incident to Mr. Dawson the following day, but continued working. Plaintiff did not know whether he sustained much of an injury to his knee at that time because Dr. Classen had informed him that the cyst was still present in the knee because he was not able to drain it during surgery.
5. Plaintiff returned to Dr. Classen on May 22, 2003 complaining that his symptoms appeared to be getting worse. Plaintiff did not clearly tell the doctor about the incident on the backhoe. On examination, the cyst seemed bigger in size. Dr. Classen tried to aspirate it but was not able to get much fluid from it. Dr. Classen then administered a cortisone injection. He followed plaintiff for the next two months and gave one more cortisone injection, but plaintiff remained symptomatic. Consequently, Dr. Classen recommended surgery to excise the cyst.
6. On July 23, 2003 Dr. Classen performed a second operation to plaintiff's right knee. During the operation Dr. Classen excised the cyst and found another tear in the lateral meniscus and removed the torn cartilage. After learning of the new tear found in surgery, plaintiff approached Mr. Dawson regarding the medical expenses associated with the operation because it appeared that the new tear was probably related to the incident on the backhoe. Mr. Dawson had never had a workers' compensation claim before and did not have any procedures in place to file a written incident report. Employer paid the deductible for the surgery instead of reporting the injury to the workers' compensation insurance carrier.
7. Although plaintiff did not testify to twisting the knee, Dr. Classen indicated that the meniscus would not have torn without a twisting movement. Since the knee popped as he was stepping through a narrow opening, it appears plaintiff twisted his knee. This incident was an unusual occurrence that interrupted his regular work routine.
8. Plaintiff only saw Dr. Classen one time after the second operation. He did not return for follow-up on August 11, 2003 as scheduled. In the meantime, another incident at work occurred, and plaintiff testified that Dr. Classen did not want to see him if a work-related injury was involved. However, Dr. Classen denied that he would have refused to treat plaintiff on that basis. Dr. Classen did not know why plaintiff had failed to return for evaluation on August 11, 2003.
9. Dr. Classen was unable to provide an opinion regarding permanent partial disability without seeing plaintiff again, but opined that plaintiff likely sustained some permanent partial disability as a result of the May 6, 2003 injury and resulting surgery. Dr. Classen did not have the opportunity to give a final evaluation. Plaintiff has now undergone a third operation to that knee which may impair Dr. Classen's ability to evaluate the permanency issue from the second surgery.
10. Plaintiff missed only one day of work as a result of the July 23, 2003 arthroscopic procedures and returned to work for defendant.
11. Defendant was not prejudiced by plaintiff's failure to provide written notice of the injury on May 6, 2003 since the employer had actual knowledge of it and plaintiff had only lost one day of work. However, in view of the delay in obtaining a permanency rating, it may be possible for defendants to establish prejudice regarding plaintiff's failure to provide written notice in the future.
12. By August 5, 2003, plaintiff was fully active on the job and was participating in the construction of the framework for an addition to the maintenance room. Vertical support beams had been installed and the crew needed to connect horizontal beams, or purlins, between the support beams. As part of the process of installing a purlin, plaintiff climbed into a basket on a forklift used to lift him and the steel beam. At some point, he lifted the weight of his end of the beam. However, his primary function was to maneuver his end of the purlin onto the correct spot on the vertical beam and connect them. Another employee connected the opposite end. At some point on August 5, 2003, plaintiff commented to coworkers that the beam was heavy, but he did not report having sustained an injury. In fact, when he had completed the task, he climbed down the vertical beam instead of walking to the roof of the maintenance building in order to get down.
13. On August 9, 2003, two days before plaintiff's scheduled appointment with Dr. Classen on August 11, 2003, plaintiff went to the emergency room where he gave a history of chronic intermittent neck pain for four years since an injury and of neck stiffness since he had lifted something five days previously. He had no arm pain, and his x-rays and neurological examination were normal. Dr. Feasel diagnosed plaintiff with a musculoskeletal strain and prescribed Motrin for him. The doctor advised him to see an orthopedic surgeon in three to four days if symptoms did not improve.
14. Plaintiff continued working for defendant until February 13, 2004, when he was laid off.
15. Plaintiff did not return to Dr. Classen or any other orthopedic surgeon until July 23, 2004 when he reported to Dr. Hasty, an orthopedic surgeon. Plaintiff complained of right shoulder pain, right knee pain and left foot pain. He informed Dr. Hasty that he had undergone two knee operations the previous year, but had returned to work. Plaintiff indicated he had experienced the sudden onset of pain and his knee had given way on him. He also indicated that he hurt his right shoulder at that time. Dr. Hasty ordered diagnostic tests. An MRI of the shoulder revealed some mild AC arthritis, but no significant changes. However, the MRI of the right knee showed another lateral meniscus tear plus a hypertrophic plica.
16. Dr. Hasty performed surgery to plaintiff's right knee on September 2, 2004. He also ordered an MRI of the cervical spine that revealed mild narrowing at C5-6 and a possible old compression fracture of T3. At the follow-up visit on September 23, 2004, plaintiff reported he had recently fallen and injured his left shoulder. Dr. Hasty ordered an MRI of that joint as well. No significant pathology was identified in the right shoulder.
17. Plaintiff subsequently reported to Dr. Hasty that his right shoulder pain extended up to his neck. Dr. Hasty referred plaintiff to Dr. Jones, a neurosurgeon, for evaluation regarding a possible neck problem. Dr. Jones began treating plaintiff on November 4, 2004 with a steroid dose pack and cervical traction. Plaintiff continued to report ongoing symptoms. Dr. Jones subsequently ordered a myelogram/CT scan. The tests revealed no evidence of nerve root compression or cervical radiculopathy. Therefore, Dr. Hasty released plaintiff from his care.
18. Plaintiff claims workers' compensation benefits for injuries occurring on May 6, 2003 and August 5, 2003.
19. Plaintiff's testimony regarding how the August 5, 2003 injury occurred is not fully credible. Plaintiff injured his neck when at some point that day he held the weight from one end of the beam. Since he did not report any knee injury in the emergency room four days later on August 9, 2003 and he did not follow-up with Dr. Classen as scheduled on August 11, 2003, he is found to have not injured his right knee at all that day. Plainiff's testimony that he was holding one end of the beam from the basket and the employees on the ground lost control of the other end was not substantiated and has not been found to be factual.
20. On August 5, 2003, plaintiff sustained a specific traumatic incident while performing assigned work, resulting in some neck stiffness. Plaintiff only received treatment on one occasion for this incident and did not lose time from work. Plaintiff did not report this incident to his employer or seek further medical treatment for almost a year, during which time an unknown injury could have occurred. Plaintiff also had a history of prior chronic neck problems. In view of these facts, there is no credible evidence or factual support that plaintiff's complaints of right shoulder and neck pain in 2004 resulted from the August 5, 2003 incident. 21. Plaintiff did not report the August 5, 2003 injury to defendant, and defendant did not have actual knowledge of the August 5, 2003 injury. Over one year later, plaintiff filed a Form 18 on October 21, 2004. The delay in receiving notice of any kind prejudiced defendants in their investigation and defense of the claim and prevented defendants from being able to provide proper and timely medical care, and from receiving documentation of reported symptoms during the months after the injury.
 * * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. (I.C. 425925) On May 6, 2003 plaintiff sustained an injury by accident arising out of and in the course of employment with defendant which resulted in a right knee injury. N.C. Gen. Stat. § 97-2 (6).
2. (I.C. 425925) Plaintiff's May 6, 2003 claim is not barred for failure to give written notice of his injury to his employer within thirty days because defendants had actual knowledge of the injury and was not prejudiced by the delay in receiving written notice. N.C. Gen. Stat. § 97-22.
3. (I.C. 425925) Plaintiff was disabled only the day of his July 23, 2003 surgery, which is less than the seven-day waiting period. Therefore, plaintiff is not entitled to compensation for temporary total disability at this time. N.C. Gen. Stat. § 97-28.
4. (I.C. 425925) Plaintiff is entitled to have defendants provide all medical compensation arising from the May 6, 2003 injury by accident, including an evaluation by Dr. Classen regarding the issue of permanent partial disability. N.C. Gen. Stat. §§ 97-2(19); 97-25.
5. (I.C. 473182) On August 5, 2003, plaintiff sustained an injury by accident arising out of and in the course of employment with defendant, from which plaintiff sustained a neck injury as the result of a specific traumatic incident of the work assigned. Plaintiff did not sustain an additional knee injury on this date. N.C. Gen. Stat. § 97-2 (6).
6. (I.C. 473182) Plaintiff's claim for benefits for the August 5, 2003 injury is barred due to his failure to give written or other notice of the injury to his employer within thirty days, when he did not have good excuse for his failure to give notice, his employer did not have actual knowledge of the injury, and defendants were prejudice by the delay in receiving notice. N.C. Gen. Stat. § 97-22.
7. (I.C. 473182) Had plaintiff's August 5, 2003 claim not been barred by his failure to give proper notice, the only compensable consequences from the injury were the medical expenses associated with the August 9, 2003 emergency room visit. Plaintiff did not injure his knee on August 5, 2003, and plaintiff failed to prove an accident or unusual event. Plaintiff did not sustain a disability, and the neck and shoulder symptoms for which he was treated a year later were not a proximate result of the August 5, 2003 incident. N.C. Gen. Stat. §§ 97-2 (6), 97-25; 97-29; Clickv. Pilot Freight Carriers, Inc., 300 N.C. 164 (1980); Andersonv. Northwestern Motor Company, 233 N.C. 372 (1951).
8. (I.C. 473182) Plaintiff is not entitled to benefits under the Workers' Compensation Act for his August 5, 2003 specific traumatic incident. N.C. Gen. Stat. § 97-2 et seq.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay all medical expenses incurred by plaintiff as a result of the May 6, 2003 (I.C. 425925) injury by accident to plaintiff's right knee, including those arising from an evaluation by Dr. Classen regarding the issue of permanent partial disability.
2. Plaintiff's claim for workers' compensation benefits for the August 5, 2003 (I.C. 473182) incident is hereby DENIED.
3. Approval of an attorney's fee with regard to the May 6, 20003 (I.C. 425925) claim shall abide the final disposition of the case.
4. Defendants shall pay the costs relating to the May 6, 2003 (I.C. 425925) claim.
5. Each side shall pay its own costs relating to the August 5, 2003 (I.C. 473182) claim.
This the 13th day of June 2006
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER